**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **FUSION DIAGNOSTIC LABORATORIES, LLC.,**<br>**Plaintiff,**<br><br>**v.**<br><br>**ATILA BIOSYSTEMS, INC.**<br><br>**Defendant.** | Civ. No. 2:24-cv-00184 (WJM)<br><br>**OPINION** |

In this is a breach of contract action, pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rules of Civil Procedure Rule 72(a), Plaintiff Fusion Diagnostic Laboratories, Inc. ("Fusion" or "Plaintiff") appeals Magistrate Judge Clark's June 10, 2026 Letter Order, ECF No. 78, ("June 10 Order") denying Fusion's request for electronically stored quality control ("QC") files for Lots 14, 16, and 31 from Defendant Atila Biosystems, Inc. ("Atila" or "Defendant"). ECF No. 79. Alternatively, Fusion seeks sanctions. Atila opposes Fusion's motion and cross-moves for sanctions. ECF No. 85-1. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiff's appeal or for sanctions is **DENIED** and Magistrate Judge Clark's decision is **AFFIRMED**. Atila's cross-motion for attorneys' fees is also **DENIED**.

## I. BACKGROUND[1]

Fusion, a New Jersey independent clinical laboratory that offers SARS-CoV-2 ("Covid") testing, seeks $30 million compensatory and punitive damages from Atila, a manufacturer and supplier of Covid Detection Kits ("Covid Kits") for damage to its business reputation as a result of Atila's purportedly defective Covid Kits, specifically Lots 16 and 31. *See generally,* Compl. Atila performs quality control tests for every "lot" of Covid Kits prior to shipping the tests to customers. The data showing the complete results of quality control tests are saved in raw data files ("Raw Data Files") on its computer hard drive. A Certificate of Analysis ("COA") is a one-page summary of the results of the quality control test set forth in the Raw Data Files. Atila claims it does not generate a COA for every lot but does so upon customer request.

The original fact discovery cut-off was April 30, 2025. ECF No. 26. On May 1, 2025, Judge Clark granted Fusion's request for a 60-day extension so that it could issue

[1] The Court assumes familiarity with the facts of this case, which are more fully set forth in the Court's June 17, 2024 and November 4, 2025 Opinions. ECF Nos. 16, 63.

subpoenas to Atila's customers. *See* ECF No. 44. On June 12, 2025, Fusion made a second request for a 60-day extension of fact discovery. June 12, 2025 Letter, ECF No. 45. In support of its extension request, Fusion explained that it had requested metadata for Lots 16 and 31, but that Atila's response was that it had already produced the "PCRD [Production Control Run Document] files documenting the quality control testing for Lots 16 and 31 in their native electronic format." *Id.* 3-4. Thus, Fusion sought, among other things, a copy of the hard drive of Atila's computer attached to the "analyzers" that contained all of Atila's quality control Raw Data Files. *Id.* 7. After a telephone conference with the parties on July 21, 2025, Judge Clark granted Fusion's request to re-depose Atila's employee but denied *all* other additional discovery requests. ECF No. 52.

On September 8, 2025, Fusion asked for a third extension of fact discovery, again seeking in part a review of Atila's hard drive. ECF No. 53. Judge Clark denied that request as burdensome and not proportionate to the needs of the case. ECF no. 59. Fusion's appeal of Judge Clark's decision was denied on November 4, 2025. ECF No. 63.

After the parties exchanged expert reports, on March 12, 2026, Fusion asked for an order directing Atila to "re-produce" key email and "QC documents in native or otherwise reasonably usable electronic form" with intact metadata. March 12, 2026 Letter, 5, ECF No. 69. To address this discovery issue, Judge Clark held a telephone conference on March 18, 2026. Noting that the request for production of certain emails in native format had already been discussed and ruled on, Judge Clark asked: "why should I revisit something I've already denied?" March 18, 2026 Hearing Tr. 16:15-16, 17:7-8, 18:10-11, ECF No. 73. Plaintiff insisted that it never received the metadata and repeatedly confirmed that it sought only an order directing Atila to "reproduce" in native form with full metadata certain QC materials *that had already been produced. Id.* 19:1-7, 19:21-20:11. Accordingly, Judge Clark's written order expressly states that "[a]s discussed during the telephone conference," Atila was to provide Fusion with "complete, [(native)] unstripped email[s] and QC ESI from Atila (Cedar Creek, BDL, and Lots 14/16/31),"[2] including specifically the metadata of such email(s)." March 18, 2026 Letter Order ("March 18 Order"), ECF No. 70. After Atila produced what it deemed responsive, Fusion argued that Atila should provide native versions of the emails already produced rather than files with only metadata and notably, made no mention of Lot 14 or other new materials. May 2, 2026 Letter, Decl. of Drew Davis ("Davis Decl."), Ex. 8, ECF No. 85-2. In response, Atila reproduced available documents in native form.

However, in a June 4, 2026 joint discovery letter to the Court, Fusion requested production of "all QC ESI for Lots 14, 16 and 31, including all PCRD runs." June 4, 2026 Letter, 2, ECF No. 73. Contrary to Fusion's earlier representations to Judge Clark that it was only seeking the *re*production of documents that were previously produced without metadata, Fusion argued that the March 18 Order did not limit "QC ESI to materials

[2] Atila's customer, Cedar Creek Lab, requested COAs for Lots 31 and 14. Lot 31 is at issue in this suit, but Lot 14 is not.

previously produced" nor did it "exclude native QC records that were not previously produced." *Id.* At the June 10, 2026 hearing, Judge Clark unequivocally rejected Fusion's newfound interpretation that Atila was required to produce *new* materials and confirmed that the March 18 Order did not re-open "wide-ranging" discovery that had ended in September 2025. June 10, 2026 Hearing Tr. ("June Hearing Tr.") 3:16-24, 6:2-17, 8:8-14. Moreover, the Magistrate Judge also noted that regardless of whether "it took a while" for Fusion's counsel to "get a handle on" the discovery issues, *id.* 4:4-6, the dispute over quality control ESI had already been ruled on because, as admitted by Fusion, it raised these same issues as far back as June of 2025. *Id.* 5:5-7, 5:20-22, 6:21-7:1. Further, Judge Clark reiterated that on March 18, Fusion had represented to the Court that it sought only the native format and metadata of documents that were already produced and therefore, the "point of the order was they were to produce updated versions of the documents that were at issue and that they were to produce the metadata." *Id.* 3:16-21, 5:8-10, 6:2-17. Accordingly, Judge Clark issued the June 10 Order denying Fusion's request for production of all PCRD run files for Lots 14, 16 and 31, which Fusion now appeals. Both sides also seek discovery sanctions under Fed. R. Civ. P. 37(a)(5)(B), 28 U.S.C. § 1927, and the Court's inherent authority. For the reasons explained below, Fusion's appeal, or alternatively for sanctions, is **denied.** Atila's cross-motion for sanctions is also **denied.**

## II. DISCUSSION

### A. Plaintiff's Magistrate Appeal

A district court may reverse a Magistrate Judge's non-dispositive order if the ruling is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). When "the magistrate [judge] has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion." *Kresefsky v. Panasonic Communs. & Sys. Co.,* 169 F.R.D. 54, 64 (D.N.J. 1996). The appellant bears the burden of demonstrating that the standard for modifying or setting aside the Magistrate Judge's ruling has been met. *Marks v. Struble,* 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

In this second time appealing a magistrate decision, Fusion insists Judge Clark's June 10 "decision not to compel Atila to produce the final PCRD runs for Lot[s] 14," 16, and 31 is clearly erroneous because Atila "ignored" discovery requests that it was obligated to produce under the March 18 Order. Pl. Br., 2, ECF No. 79-2. According to Fusion, the March 18 Order mandated production of all native quality control ESI for Lots 14, 16, and 31. Although this motion is an appeal of the June 10 Order, Fusion ultimately seeks to have this Court "enforce" or compel compliance with the March 18 Order, or alternatively, to preclude Atila from claiming that it performed the required quality control testing for the Lots at issue. Pl. Reply Br., 2-3, ECF No. 86.

As a threshold matter, Fusion misinterprets the March 18 Order and therefore, its contention that the June 10 Order denies "enforcement of [its] prior discovery requests,"

Pl. Br., 1, is incorrect. The March 18 Order only granted the *limited* request for native form with full metadata of materials that had *already* been produced to date as had been discussed "during the telephone conference." March 18 Order, 1. Even if the language of the March 18 Order "could support other interpretations," there is no basis not to defer to the Magistrate's interpretation of his own ruling or determination of whether his orders have been satisfied. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 244-245 (3d Cir. 2013) (citing *DirecTV, Inc. v. Leto,* 467 F.3d 842, 844 (3d Cir. 2006) ("[W]e normally give great deference to a court's interpretation of its own orders")). Furthermore, in a fruitless effort to limit the impact of the March 18 Order, Fusion contends that the March 18 Order addresses only the format but not the scope of production, when in fact, it addresses both format (native form with metadata) and scope (reproduction of documents already produced) of discovery.

Because the March 18 Order did not require an extensive production by Atila of all native quality control ESI for Lots 14, 16, and 31, Fusion cannot claim that Atila was deficient or did not comply with the March 18 Order. Moreover, as Fusion acknowledged, the discovery dispute over quality control ESI was raised back in June 2025 and subsequently ruled on by Judge Clark. Fusion's related request for a copy of Atila's hard drive containing Raw Data Files was also denied twice by Judge Clark and affirmed by this Court. By March 18, 2026, after discovery had already been closed for nine months and Judge Clark had already twice extended discovery at Fusion's request, Fusion again requested ESI quality control files, which Judge Clark described as "discovery that date back months if not years." June Hearing Tr. 5:5-7. At the time, Fusion agreed that it was only seeking a limited reproduction of documents already produced even though now, it insists that the broader discovery it seeks is critical to its claims. Any disagreements with Judge Clark's March 18 Order should have been raised within 14 days in a timely appeal as required under Federal Civil Procedure Rule 72(a) and Local Rule 72(c)(1)(A).

In sum, Fusion has failed to meet its burden to show that Judge Clark's decision not to reopen discovery was clearly erroneous, contrary to law, or an abuse of discretion. *See id.* 5:16-18 (noting lateness of the request for broad discovery); 6:21-7:1 (commenting that parties could continue with discovery "until 2050 if this is the way we're going to keep doing this stuff"). "Discovery must have an end point, and the decision to cut off discovery is committed to the management skills of the district court," which may in turn delegate such matters to a magistrate judge. *Anglin v. Anglin*, No. 16-04049, 2023 WL 5950396, at *3 (D.N.J. Sept. 13, 2023) (citation modified). Judge Clark's June 10 Order denying Fusion's request for production of all PCRD run files for Lots 14, 16 and 31 is **affirmed**. Accordingly, Fusion's improperly noticed request for sanctions is also **denied**.

B. <u>Defendant's Cross-Motion for Sanctions</u>

Atila cross-moves for an award of attorneys' fees incurred in responding to this appeal under Fed. R. Civ. P. 37(a)(5)(B), 28 U.S.C. § 1927, or the Court's inherent

authority is denied. First, Rule 37(a)(5)(B) authorizes a court to issue a protective order and sanctions when a "motion for an order compelling disclosure or discovery" is denied. Because the motion before this Court is an appeal of the Magistrate's discovery order, Rule 37(a) does not apply here.

Second, under 28 U.S.C. § 1928, fee shifting is permitted when a party or counsel "so multiplies the proceedings in any case unreasonably and vexatiously." "[U]nder § 1927, an attorney's conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009) (citation modified). A finding of bad faith requires "some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay" and must be "demonstrated through clear and convincing evidence. *E.E.O.C. v. U.S. Steel Corp.,* 877 F. Supp. 2d 278, 291–92 (W.D. Pa. 2012) (citation modified). Counsel's conduct is not bad faith if it is the result of "misunderstanding, bad judgment, or well-intentioned zeal." *Grider*, 580 F.3d at 142 (citation modified). While Plaintiff's counsel's appeal of the June 10 Order lacks merit, the Court cannot conclude that such conduct, while bordering on vexatious, is evidence of willful bad faith rather than bad judgment or well-intentioned zeal.

Likewise, absent bad faith, the Court declines to impose sanctions under its inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

## III. CONCLUSION

For the reasons noted above, Judge Clark's June 10, 2026 Order is **affirmed.** Each party's request for sanctions is **denied.** An appropriate Order follows.

**WILLIAM J. MARTINI, U.S.D.J.**

Date: August 17, 2026